Jonathan Cohen, Petitioner, Service Employees International Union Local 1107 Why is dues deduction a creature of contract and thus, under the Board's rationale, an exception to CATS, when all these other terms and conditions of employment, which are similarly in the Board's so-called contract creation round, uniquely the products of a collective bargaining relationship, and yet not subject to CATS? I agree with the Court's implication. The Board does not do anything to distinguish it. It simply says, well, we didn't confront that in this case. But the Board needs to do more. The case law is very clear. Agency adjudication requires either a rational decision in conformance with agency precedent or explanation for departing from precedent. And the Board just utterly fails in that. It does not explain why, if dues deduction is a creature of contract, why there would not similarly be an exception to the unilateral change doctrine for all the other types of terms and conditions of employment that are similarly creatures of contract. And Judge O'Scanlan identified them here. The Board simply has no answer, either in its decision or in its brief on appeal, why that is so. And I want to point out one thing that's unique about our case that I think really heightens that inconsistency and makes it clearer. In our case, there were a host of unfair labor practices. One of them was that the hospitals unilaterally altered the access provisions after expiration of the contract. And the ALJ and the Board agreed that the employers violated the act by unilaterally changing the access for the employers. Those were unilateral changes. In other words, the union's right to access the employer's premises doesn't exist under the statute. It only existed as a result of the collective bargaining agreement. Those collective bargaining agreements expired. The employers ended the union's access to the premises in a number of ways. And the Board agreed those were unilateral changes. I think it simply heightens the glaring inconsistency of the Board's rationale. There's simply no explanation for why union access in our case, which is exclusively the contract for a product of the collective bargaining agreement, should be subject to cats and dues deduction would not be. So there's two grounds that we're asserting that the Board's decision is inconsistent with this court's line of cases, the Hacienda line of cases. The second ground is that the Board's decision is not rational and consistent with the act. And the reasons are outlined in our brief. And unless the court has questions, I don't want to belabor the point because Ms. Weber did such a great job outlining them. I would like to focus on retroactivity. There's a five-factor test that this court uses to evaluate whether the Board can apply a new rule retroactively. And that's what happened in our case. Counselor, with respect to retroactivity, we don't get to that issue, do we? Unless we affirm? Well, Your Honor, I think there's... Or deny the PFR. So I think that it's a unique issue that the court probably has to address because even if the Board's decision, first of all, was rationally consistent with the act, you would still have to confront whether it's possible to retroactively apply it to us. But even if you conclude that the Board's decision is not rational and consistent with the act, I think the court is probably right, then you would just remand me. Yeah, right. Okay. So the five-factor test, I don't think it's indisputable that it comes from this court's decision in Oil, Chemical, and Atomic Workers. I would like, if the court's okay, just go through those factors briefly. The first factor is whether the case is one of first or second impression. There's no dispute in this case that ours is the case of second impression, which is in our favor. And I just want to add one more point, which is that in our case, even though it's the same employer, Vanelli Hospital never urged, in any stage of this proceeding, for the Board to overturn Lincoln. And that mattered to this court in the Vanelli case cited in our papers. And I think it should matter here, too. The second and third factors basically measure the lines. And as this court said, it is en banc decision. Garcia-Rodriguez, the second and third factors measure the lines. I want to take the third factor first. The third factor looks at whether the former rule was in effect at every stage of the underlying proceeding. Here it was. When the parties entered into the collective bargaining agreement that's at issue here in 2013, the Board's rule was the WKYCTE decision, which, like Lincoln Lutheran, held that due seduction is subject to cap. I acknowledge that that decision was ultimately called into question by Bill Canning and the President's recess appointments to the Board. But it was still Board precedent at the time, Congress. And moreover, in 2015, only a few short years later, the Board decided Lincoln Lutheran and readopted that rule. So Lincoln Lutheran was in effect at the time our contract expired. When the contract expired, of course, we assumed the unilateral change doctrine applied to due seduction. And so we would have had no reason to believe that the employer could pull the rug out and cease due seduction unilaterally because the law, the Board law, was in effect in the period. That was true when we filed our unfair labor practice charges. It was true when the general counsel issued a complaint in this case. It was true when the case was tried before the administrative law judge. And it was true at every moment when the case was coming before the Board except for the last month. And in the oil chemical and atomic workers case cited in our papers and the Benelli case cited in our papers, not how this Court analyzed the question, was the former rule in effect at every stage of the underlying proceeding? Here it was. The second factor. Before you move on, can I ask a question about that? I actually have two questions, so I'll just tell you what they both are. So I think the Board essentially argues that, well, you couldn't really rely on that because the law had been one way for so long, and then it was always in a state of flux, and then there was this issue raised from the get-go about the recess appointment. So you couldn't really rely on it. That's the first question. So how do you respond to that? The second one, let me just tell you what the second one is. I don't want to interrupt you again. So reliance has to do with, you know, you might have done something differently. So what are the ways that this could have been handled differently by the union in contract negotiations if you weren't relying on this existing rule that existed as of 2012? Anyway, there you go. Those are great questions. So the first question, what do I make of the Board's argument that board law really wasn't settled and so our reliance wasn't that strong? And the answer is clear, and it's clear as a matter of law, and it comes from this Court's decision in the Fourth and the Hacienda-Linus cases. We refer to it in our briefs as LJEP courts, local joint executive court versus NLRP. It was the 2018, it was the final decision of that line of cases. Also Hacienda-Ford. Sure, we'll call it Hacienda-Ford, Your Honor, if you prefer. Here's what the Ninth Circuit ruled in that case. That the employer, the issue in that case was whether the employer in a right-to-work state could reasonably rely on Bethlehem Steel. And thus, whether make-all relief was appropriate, the Board had decided, you know, we're not, yes, the Ninth Circuit told us that Bethlehem Steel doesn't define a right-to-work state, but we think the employer's reliance on Bethlehem Steel was nonetheless reasonable, so we're not going to award make-all relief. It came back up to the Ninth Circuit, and the Ninth Circuit held as a matter of law that an employer's reliance on Bethlehem Steel in a right-to-work state was unreasonable. But that's only with respect, is it not, to the remedy? I don't think the Board in Hacienda-Ford was deciding the precise issue that we have in this case, were they? Your Honor, respectfully, I disagree. What the Ninth Circuit said in LJUV 4 was this, and I'm quoting now. The rule in Bethlehem Steel was not well established in the absence of a union security clause, nor had it come to stand for a legal rule in that context. Therefore, any reliance by the employers on Bethlehem Steel and Tampa Sheet Metal was unreasonable. That's the Ninth Circuit law, and so I think, Judge Kennelly, that really clears out the underbrush. That's the answer. In this circuit, employers in right-to-work states could not rely on Bethlehem Steel. What that means, Your Honor, is that the default rule applies. Caps. You cannot make unilateral changes in mandatory terms of conditions of employment, including dues deductions in a right-to-work state. The next question you asked, Your Honor, was what would the union have done differently? What was its reliance interest here? And here's the answer. When that contract expired in 2016, parties were engaged in collective bargaining. The union was relying, and I'll admit this is not in the record because we didn't litigate retroactively, but the law was in 2016 that Lincoln Lutheran applied. Dues deduction was subject to caps. Therefore, the union had the expectation when the contract expired that dues deduction would continue at least until the parties reached an impasse, which they never did. What would it have done differently? Had the law been different, Your Honor, it would have known early on during that contract that the minute that contract ends, the employer can cease dues deductions and pull the rug out and cease the financial lifeline. And so it would have made alternative, I'm assuming it would have made alternative arrangements to collect dues rather than relying on its contractual lifeline for dues deduction. That's a big deal, and I understand Lincoln Lutheran was reversed, but if you look at Lincoln Lutheran, the board makes specifically this point. At a critical time in successor negotiations, when the union's energy is focused on getting a new contract, it would be enormously disruptive to require the union to suddenly arrange a new method of basically collecting dues. Does that answer your question, Your Honor? It does, thanks. Okay. So if I could, I'd like to address the fourth and fifth factors in order to preserve any remaining time. The fourth factor, Your Honor, asks whether, what is the burden to the party from the retroactive application of the new rule? The burden here is we lost the remedy of make whole relief. The employer paying our back dues. That's enormous. We're talking about more than 500 employees at a time. Over what's now been a four-year period. And what the board says is, well, you can still collect those dues from employees. You don't need to use dues deduction. Just go directly to those employees. Here's why that's not a satisfying answer, Your Honor. Remember, in our case, the employer withdrew recognition from the union in February and March of 2017. It basically obliterated the union relationship. And that was true for the entire time until the board issued its ruling affirming the ALJ's finding that the withdrawal of recognition was unlawful in 2020. So what the board is saying is go, go collect dues from members at a time when you had no union. You had no collective bargaining relationship. You were deprived of your rights to a union representative and had no collective bargaining agreement. Why should the members have to bear the burden of the employer's wrongful conduct when the board agrees in this case, and there's no dispute, that the employer's withdrawal recognition was unlawful? The last factor, I see I'm almost running out of time, the last factor, Your Honors, what's the board's interest in retroactive application of the new rule? Here the board says it's stability of labor relations. And I would submit, Your Honors, that this couldn't be a better example of destabilizing rule. What the board is saying is, yes, board law was clear that what the employer did was unlawful. Yes, you could rely on existing board law to do something that was subject to tax. But now we're going to deprive you of that law, pull the rug out from under you, take that remedy away. How does that stabilize labor relations? I don't think the board has any satisfying answer to that. Your Honors, I see I have 50 seconds left. I'd like to save my remaining time. We'll give you a minute. Thank you. Mr. Jost, when you're ready, you may proceed. Please, the court, Micah Jost for the NLRB. Can Your Honors hear me? Yes. I'd like to begin where opposing counsel left off with the subject of retroactivity, but, of course, I'm happy to speak to the merits of the case as well. With regard, first of all, to Judge Scanlon's question regarding whether the court would have to reach retroactivity, I agree with union counsel that if the court were to disagree with the board on the merits, there's no need to address the separate retroactivity question in this case. Proceeding to the factors that the court applies in considering whether retroactivity creates a manifest injustice, I want to emphasize, first of all, that retroactivity is the default rule in board proceedings. When the board announces a new rule through adjudication, it is the board's usual practice to apply the rule retroactively in all pending cases, and a party seeking, in effect, an exemption from that default rule has the burden of showing manifest injustice. We submit that the union has shown nothing of the sort in this case. The primary reason it has failed to meet that burden is factors two and three. Factors two and three evaluate, as the court explained in Garfias-Rodriguez's case, whether there has been an abrupt departure from settled law and the related question of whether there was reasonable reliance on the preexisting law. Those go hand in hand. In this case, there simply can have been no reasonable reliance because there was no settled law for the board to depart from. As the court said in Garfias-Rodriguez, these factors favor retroactivity when, quote, a party could reasonably have anticipated the change in the law such that it, quote, would not be a complete surprise. If the court examines the procedural history of this case, dating back to the board's first hacienda decision in the year 2000 and through the entire saga back and forth, and in particular, this court's emphasis at every stage of that proceeding on the proposition that the board had discretion to craft a different rule, it is impossible to say that this rule could have come as a complete surprise to the union in this case. I'd like to briefly recap the procedural history in those cases because I think it's informative as to this issue. In 2000, I want to emphasize that Hacienda 1 was a 3-2 board decision with three members adhering to precedent without, as this court explained, any explanation, and two members calling for overruling. In 2007, there was another split decision, again, with three members applying a different rationale to reach the same conclusion and two members dissenting, calling for overruling. In 2010, it was a 2-2 decision with neither side able to reach a majority, and in that case, what I'd like to emphasize is that the dissenting, excuse me, the concurring two members who supported the application of Bethlehem Steel did so based on the very same contract creation rationale that the board further explicated in this case. So the idea that this theory came out of nowhere or could have blindsided the union or created a situation where the employer was pulling the rug out from under it simply ignores the procedural history here. Thereafter, we have the 2012 decision in WKYC-TV, which was ultimately set aside under Noel Canning. That was a 3-1 decision, Lincoln-Lutheran 3-2, and then, once again, the change in this case. All along, it should have been crystal clear to any union or employer operating under the Act that this sort of back-and-forth was permissible because, as this court has explained, the statute is ambiguous. In Brand X, which the court cited in the decision in Hacienda 3, in Brand X, the Supreme Court explained that it is for the agency in an ambiguous circumstance such as this one to change the law either based on a change in fact or based on a change in administration. In light of that reality and in light of the historical back-and-forth that the board has engaged in, it was entirely proper and entirely foreseeable that the law would switch in this circumstance. The cases that are similar that we cite in our brief, I think the most similar circumstance is Midland. Midland was a doctrine that the board ultimately embraced, I believe, in the 1980s in the context of election misconduct allegations, and it was following a repeated fluctuation in board law that took place over the course of the 1960s, 1970s, and 1980s. This court, in its best products case in 1985, upheld retroactivity in that circumstance, and we cite other cases, including Chicago Marine Containers from the Seventh Circuit, where the court emphasized that when there was acrimonious debate characterizing the back-and-forth in board precedent, it was simply unreasonable for a party to rely on what it argued was clearly settled precedent. The affiliated Midwest Hospital case is to the same effect. In that case, similarly, the law was in such a flux that it was difficult to characterize any particular position as preexisting law. That's precisely what we have here. There are other areas of law, such as super seniority for certain union officers and the effect of the 10-B period on dismissed charges where the same fluctuations have likewise created a situation where it was unreasonable for a party to rely on preexisting law. Turning to the other factors, if you look at the birth factors, the board considered the circumstance of a union in exactly the same position, essentially, as the union in this case in Valley Hospital, and there they acknowledged that it is an inconvenience to the union to collect dues from its members rather than to have the employer provide them directly. But the key for this analysis is that in any case where a rule is being applied retroactively, there will be some burden on some party. The question is simply whether it was an unfair or unreasonable burden creating a manifest injustice. And again, in this circumstance where the law was so profoundly unsettled, it simply was not reasonable for the union to choose not to mitigate its damages in any way over the course of years. For example, I point the court to the local 900 electrical workers case, which is a D.C. circuit case from 1984, and there in its retroactivity analysis dealing with a super seniority clause, the court took into account whether the union in that case would be exposed to substantial liability or whether it had taken steps to limit the liability. In that case, the union, seeing the writing on the wall, being aware that the law could change, the union had itself suspended the effect of its super seniority clause in order to limit the back pay that it could be exposed to. I think the board recognized in this case that the union in this union's position in Valley Hospital could have taken similar measures. It could have protected itself by beginning to collect those dues itself. In Garcias Rodriguez, the court recognized that even when there is some monetary amount at issue, for example, in that case it was, I believe, paperwork filing fees, the fact that there is some money or some remedy that a party will lose due to retroactive application of new law does not inherently mean that the burden is unfair. Finally, addressing the statutory interest, as the board explained, what we're looking at here is a practically unbroken thread of board law dating back to 1962. I fully acknowledge what the court said in LJEB 4, which is the decision reviewing the Hacienda 4 case. In that case, as opposing counsel noted, the board was told that it was unreasonable for a party to rely on Bethlehem Steel being the law in a right-to-work setting. As we explained in our brief, the court did not say anything about the opposite circumstance, which is to say it did not say that it was necessarily unreasonable for a union to assume that the opposite rule would apply. I may have mixed that up, but the point of my... I see where you're going, Noah. There's a lot of uns and dones and nones, but yes. In effect, we return to the point that the law was unsettled, that just because it was unreasonable to assume that the law would go one way does not mean that it was necessarily the opposite for the law to go the other way. Circling back briefly to the first factor that was discussed, having to do with whether it's a case of first impression, as we noted in our brief, the same employer is at issue in both cases. To apply the rule retroactively in the case of first impression, but to deny retroactive application in the second impression to the very same employer I submit would be an anomalous circumstance. I agree. To my knowledge, the employers in this particular case did not argue for a reversal of Lincoln-Lutheran. Their argument was a different one based on the specific language of the law provisions in this case. But the arguments that the employer put to the board in the other case came in a different procedural posture where the employer had prevailed before the administrative law judge, and therefore it didn't have any reason to ask for the overruling of Lincoln-Lutheran. Counsel, could I bring you back to the merits? Your colleague argued the merits, of course, but I'd like you to restate for me, just so I understand, is the board saying that it did not need to evaluate these other contract categories? In effect, all it needed to do was to show how Lincoln was wrongly decided. Now, that's a telescoping of a lot of discussion, but help me get to the real heart of this case, the real core. Sure, Your Honor. I think I would agree with that position. I, of course, agree with the entire argument that my colleague laid out on that point. The only issue before the board here was the treatment of dues checkoff. In this case, as my opposing counsel noted, there was an access violation, but there was never any argument before the board that access should be treated differently because it is a, quote, contract creation. To my knowledge, the employer did not raise that argument at any time as a defense to the finding of a violation. When you say access, did you mean checkoff? No, I'm sorry. I mean the employer's interference with the union's right of access to the employer's premises to communicate with its employees. In this case, there was a right laid out in the contract authorizing the union to enter the employer's premises to speak with represented employees under certain circumstances. The board did find a violation. I agree with opposing counsel that the fact that the board found a violation there clearly indicates that it does not view access or any of the other traditional CATS subjects of bargaining as being exceptions. It does not view that as being changed by the rationale here. But no party was in a position to, before the court, no party is in a position to demand an explanation for that because before the board, no party argued that access was, in effect, a contract creation. It's clear that the board doesn't regard it as that, but what the board was saying. Okay, so connect that up with the dues checkoff. Sure, so dues checkoff, what the board set out to do in this case was to explain, returning to its language in Bethlehem Steel, where it admittedly spoke at times in terms of the implementation of union security, but also spoke in terms of contract creation. The board returned to Bethlehem Steel to draw what it views as the defining common thread that connects union security, dues checkoff, arbitration, no strike, no lockout, and management rights. In the board's view, those historical exceptions dating back essentially 60 years are defined and are joined together by the fact that they are uniquely created by the contract. They cannot exist in the board's view prior to the parties entering into a collective bargaining agreement. And you recall Ms. Weber's argument that, no, they were all statutory. I believe her argument is that they all constitute a statutory waiver, or excuse me, a waiver of a right that a party would otherwise have under the statute, for example, to engage in a strike for a union or to demand that the employer not make unilateral changes as with. And she's wrong because. Well, that that is the analysis or the those are the defining characteristics that the board viewed as determinative in Lincoln Lutheran. In this case, the board viewed that differently and said, if you at a certain level of abstraction, anything is a waiver of a statutory right. Because as as I believe she noted, under the H.K. Porter case, a party has the right under the statute to not agree to anything. The board doesn't set the subject of the decisions of the parties. So the point that you just made that there's this common thread that connects this and the other five cases, did the board say that in its decision? Yes, Your Honor. The board, if you turn to the Valley Hospital case at page four, they have this block quotation from Hacienda three, where they say these exceptions, the the traditional exceptions. There is a major distinction to be made between terms and conditions subject to the Cats rule and exceptions to that rule. The exceptions, including checkoff, are uniquely of a contractual nature. And then it goes on to list other provisions such as wages, pension and welfare benefits, hours, working conditions, which the board does not view as being uniquely creatures of contract. There's a similar discussion at page six with regard to payroll deductions. And I see my time has run over. I'm happy to answer any further questions. Anything further? Colleagues? Nope. All right. Thank you very much, Mr. Joe. In that case, the board asked that the petition for review be denied. Sure. Mr. Cohen, you have one minute. Thank you. And I hate to do this, but, you know, I've reflected further on just this question about whether it's going to happen. Activity, if it granted the petition for review and further thinking about it, I think it might. And here's why. Retroactivity asks, is it fair to apply a change in the law when law was settled at the time of the adjudication? And I think even if this court concludes that Valley Hospital one is interrational or consistent with the act, it still begs the question. Can we suffer the burden of a change in the law when the law was clear at the time that our case went through the agency? And I just want to make sure that, you know, in further reflecting on that, that my position is clear. I do think the panel has retroactivity. The second point I want to make is that the inconsistency in our case is glaring and it's unexplained between the board's resolution of the access issue, which is uniquely a creature of contract and its resolution of the dues issue. There's no explanation in our case for why those two issues, both uniquely creatures of contract, are treated differently. You know, it's I think a basic tenet of administrative law that the agency has to explain, either conform to present or explain its departure from it. And I think it fails to do that here. I see I'm over. Thank you, Your Honors. I appreciate the time today. Thank you, Mr. Cohen. Mr. Jost, again, very good advocacy. We really appreciate it. And this matter is submitted and this panel is in recess. Actually, we're adjourned. I take it back. We're adjourned. Thank you so much, everybody.
judges: O'scannlain, Owens, Kennelly